[No. 1690.]

ALEX. THOMAS v. THE STATE.

1. PRACTICE — CONTINUANCE.— Failing to state the residences of the absent witnesses or that their residences are unknown; or to state that there was no reasonable expectation of procuring the witnesses by a postponement of the trial to a future day of the term, and to set out the facts expected to be proved by the absent witnesses, an application for a continuance is fatally defective in three particulars.

2. SAME.— An application for a continuance, to be sufficient, must comply strictly with the requirements of the Code. Nothing can be presumed in aid of an application for a continuance; and, therefore, a general allegation that the absent witnesses will prove the defendant's innocence will not meet the requirement that the application shall set forth the facts expected to be proved.

3. SAME — EVIDENCE.— The action of the court below in receiving incompetent evidence will be revised by this court only when it is made to appear by proper bill of exception that it was objected to when offered, or that the court overruled a proper motion to withdraw the same.

4. SAME — CHARGE OF THE COURT.— It is the duty of the defendant to except to an unsatisfactory charge at the time it is given, or to seek its correction by asking a special charge.

APPEAL from the District Court of Fayette. Tried below before the Hon. L. W. Moore.

The conviction in this case was for the theft of two oxen, the property of Austin Hardrick, in Fayette county, Texas, on the 1st day of September, 1884. A term of five years in the penitentiary was the punishment awarded.

Austin Hardrick was the first witness for the State. He testified that he lived in Washington county, Texas, near the town of Bur-

ton.  He had known the defendant, who lived near him, for about fifteen years.  Some time in September, 1884, the witness lost a yoke of oxen.  They were taken from their range near the witness's place in Washington county.  Some three weeks after the witness missed them, he found them in the possession of Max Meitzen, justice of the peace, at Fayetteville, in Fayette county, Texas.  During the fifteen years witness has known the defendant, the defendant has lived where he now lives, in the witness's neighborhood.  The oxen stolen from the witness ranged near the defendant's house, and the defendant knew those oxen perfectly well, having often seen witness work them.  Witness gave no one permission to take the animals.

Alvis Pochila, a butcher of Fayetteville, Texas, testified that some time in September, 1884, the defendant brought a yoke of red oxen, branded with a diamond-D, to his butcher shop, and offered them for sale.

F. J. Spaeck testified, for the State, that in September, 1884, the defendant offered to sell him a yoke of red oxen, branded with a diamond-D, for $50.  This occurred at witness's store in Fayetteville.

Max Meitzen, justice of the peace of the Fayetteville precinct, Fayette county, Texas, testified, for the State, that some time in September, 1884, he went to the butcher shop of Pochila, in Fayetteville, and saw the oxen described in Pochila's pen, and the defendant sitting on the fence.  Witness went home, saddled his horse and started to La Grange.  As he was passing Spaeck's store, he saw the defendant driving the oxen hurriedly from the store.  Witness rode rapidly and overtook the defendant, intent on finding out something about the animals.  He asked defendant where he was from.  He replied that he lived about seventeen miles below Fayetteville and owned the oxen, having raised them.  He afterwards said that he lived above Fayetteville, near Round Top.  Witness then told him that he would hold him in arrest until he could give a better account of the oxen.  He resisted arrest, and witness struck him a severe blow over the head with his pistol, cutting a gash, and then conveyed him to Fayetteville and delivered him to the constable.  That night he escaped from the constable.  Witness then posted the oxen, and wrote descriptions of the defendant to several sheriffs.  In about three weeks Austin Hardrick came, proved and recovered the oxen.  When witness arrested defendant, he searched him for papers, bill of sale or other means of identification, but found none.  Upon information derived from Hardrick, the defendant was arrested in Washington county.

Eliza Norman, the defendant's sister-in-law, testified, for the State, that she and defendant lived at the same place near Burton, in Washington county. She remembers when Hardrick lost his oxen. The defendant was absent from home at that time for at least a week. When he returned he had a gash on his head, which he said was the result of a horse-kick.

The defendant then introduced in evidence a bill of sale, signed "Henry Knolly," and witnessed by "D. P. Whetstone" and "Henry Thomas," conveying to Alex. Thomas the oxen in question.

William Rankin, deputy sheriff and jailer, testified, in rebuttal for the State, that he had the defendant in custody about four weeks, during which time he had often seen the defendant write. The bill of sale in evidence was in the handwriting of the defendant, including the signatures of the vendor and the witnesses. The letter exhibited was written in jail by the defendant, and signed by him in the witness's presence, and appeared to be in the same handwriting as the bill of sale.

William Thomas, son of the defendant, testified in his behalf, in rebuttal, that the defendant was a lawyer. Witness knew his father's handwriting. The bill of sale in evidence was in the defendant's handwriting, but the letter deposed to by the witness William Rankin was not.

Sheriff John T. Rankin, for the defense, testified that he had seen a number of letters sent out of jail by the defendant, and believed he knew his handwriting. Witness was of opinion that defendant wrote both the bill of sale and the letter in evidence.

The motion for new trial presented the questions discussed in the opinion.

*Hume & Shepard*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. Appellant's application for a continuance was properly overruled. It failed in three of the statutory requisites: 1st. It did not state the residences of the witnesses nor that their residences were not known. (Code Crim. Proc., art. 560, sub-div. 1; *Vanwey* v. *The State*, 41 Texas, 639.)

2d. It did not state that there was no reasonable expectation that the attendance of the witnesses could be secured during the term by a postponement of the trial to a future day of the term. (Code Crim. Proc., art. 560, sub-div. 6; *Strickland* v. *The State*, 13 Texas Ct. App., 364.)

3d. It did not state the facts which were expected to be proved by the absent witnesses. (Code Crim. Proc., art. 560, sub-div. 3.) The statement is that "defendant expects to prove himself clear by said witnesses." A general allegation that the witness will prove the defendant's innocence will not suffice." (*Huebner* v. *The State*, 3 Texas Ct. App., 458; *Grissom* v. *The State*, 8 Texas Ct. App., 386.) It is a well established rule of practice that nothing is presumed in aid of an application for continuance. (*Cantu* v. *The State*, 1 Texas Ct. App., 402; *Murray* v. *The State*, 1 Texas Ct. App., 417; *Buie* v. *The State*, 1 Texas Ct. App., 452; *Bowen* v. *The State*, 3 Texas Ct. App., 617; *Robles* v. *The State*, 5 Texas Ct. App., 617.) Strict compliance with the exact requirements of the Code is necessary. (*Skipworth* v. *The State*, 8 Texas Ct. App., 135; *Anderson* v. *The State*, 8 Texas Ct. App., 542.)

It is insisted that certain evidence was adduced by the State upon the trial which was illegal and inadmissible. If so, the record fails to show that defendant either objected to its introduction at the time or moved subsequently to have it withdrawn from the jury. Without objection at the time or a subsequent motion to withdraw it, and a bill of exceptions reserved to the ruling of the court in admitting it over objection, or refusing to withdraw it on motion, this court will not revise the admission of evidence. (Code Crim. Proc., art. 686; *Alderson* v. *The State*, 2 Texas Ct. App., 10; *Brown* v. *The State*, 2 Texas Ct. App., 115; *Owens* v. *The State*, 4 Texas Ct. App., 153; *Allen* v. *The State*, 4 Texas Ct. App., 581; *Roberts* v. *The State*, 5 Texas Ct. App., 141; *Hatch* v. *The State*, 6 Texas Ct. App., 384; *Lanham* v. *The State*, 7 Texas Ct. App., 127; *Pippin* v. *The State*, 9 Texas Ct. App., 269; *Stewart* v. *The State*, 9 Texas Ct. App., 321.)

One of the grounds in defendant's motion for a new trial is that "he was hurried into trial in the absence of his counsel." There is nothing affirmatively shown by the record supporting this allegation, and it moreover appears from the evidence of one of defendant's own witnesses that the defendant is a lawyer.

As to the charge of the court, no exception was taken to it by defendant, nor were any additional instructions asked by defendant. It presented the law of the case. The evidence is amply sufficient to sustain the verdict and judgment, and in our opinion the judgment should be affirmed.

*Affirmed.*

[Opinion delivered January 21, 1885.]